### No. 1,200.

### S. MEYER vs. JOHN T. LUDELING.

*A submission to arbitration of the matter, embraced in a subsequent litigation, and a suit in affirmance of the award, praying that it be made executory, constitute a legal interruption of prescription.*

APPEAL from the Fifth District Court for the Parish of Ouachita. *Richardson*, J.

*O. J. & J. S. Boatner* for Plaintiff and Appellee.

*Franklin Garrett & John T. Ludeling* for Defendant and Appellant.

---

The opinion of the Court was delivered by

WATKINS, J.   The plaintiff sues upon open mercantile accounts for goods, wares and merchandise furnished by him during the years 1884 and 1885. Deducting a credit of $7,044.45 he claims a balance of $3,845.02.

*In limine* the defendant tendered a plea of three years' prescription against each and every item of the several accounts, and it was separately tried and overruled.

The defendant's answer sets up the general issue and a full settlement of accounts up to and including 1883.

He avers that in the spring of 1884 "he entered into an agreement " with the plaintiff to purchase certain supplies for plantation use " from them, under the following terms and conditions, to-wit : Ten " per cent to be added to the cost for meat and tobacco, to be paid for " at the end of the year ; for dry goods and supplies, except meat and " tobacco, he was to pay cash, the price to be ten per cent added to " cost."

He avers that, in pursuance of said arrangement, he had, up to the

middle of June, 1884, " settled for all amounts represented by plain-
" tiffs to be due for cash purchases," in cash and drafts.

That on or about the 24th of June, 1884, he purchased a bill of mer-
chandise and delivered to him a lot of wool " to be sold by plaintiff for
" defendant, and the proceeds of sale applied " thereto ; and that no ac-
count has been rendered to him thereof, and plaintiff owes him there-
for.

He then avers " that notwithstanding the said judicial settlements,
" plaintiff's accounts erroneously contain charges for articles alleged to
" have been purchased within the periods for which defendant had
" settled;" and, though requested so to do, plaintiff failed to give him
bills of the merchandise from time to time.

Complaint is made of " the charges for freight bills," as being erro-
neous and unauthorized, and he avers that " in all instances (he) *reim-*
" *bursed* plaintiff, and as soon as he was informed of such payments."
He specially avers that the charge of $15.00 for peas was reimbursed.
The defendant then represents that he delivered to plaintiff in 1884
and 1885, 277 bales of cotton, of which 265 were sold him and twelve
were consigned for shipment and sale for his account; that in Janu-
ary or February, 1885, he delivered him six additional bales, for
which plaintiff has rendered him no account, "nor have the proceeds
been credited" to him on account; that, in like manner, other cottons
were delivered to him for sale on account and of which he has received
no return.

He " avers that plaintiff held the proceeds of the sale of all of said
" cotton hereinabove described, as a special deposit for (him) and that
" they owe him for the proceeds $12,430.98," for which he prays judg-
ment in reconvention against the plaintiff, with legal interest; and he
also prays that plaintiff's demands be rejected.

After a protracted trial, and a full investigation of the accounts of
the parties *pro* and *con*, and the vast amount of parol and documen-
tary evidence, the judge *a quo* rendered judgment in favor of plaintiff
for the amount claimed, subject to a credit of $559.32, and from this
judgment the defendant has appealed.    In this court the plaintiff and
appellee has answered the appeal and demanded that the judgment be
increased in his favor.

I.

The first question for us to determine is that of prescription.  The
date at which prescription *liberandi causa* begins to run on open mer-
cantile accounts is at their maturity, that is, at the end of the year in

which they are contracted. On this question there is no dispute. This suit was filed and service of citation made on the defendant, in person, on the 3rd of January, 1888. Hence all items of indebtedness which were contracted on any date, either in 1883 or 1884, became prescribed on the 31st day of December, 1887—three days antecedent to the service of citation on the defendant—unless same was interrupted in some of the modes provided by law. Those contracted in 1885 were saved from prescription by this suit.

The first point made by plaintiff's counsel is that, at different times, and reasonably, the various accounts were rendered to the defendant, and that same were not specifically denied or disavowed by him, and that, on that account, and in that manner, same acquired the character and *status* of "stated accounts" which are only prescribed in ten years.

His petition makes mention of these as the "several accounts * * for the years 1884, 1885 and 1886." Special mention is made of the $262 balance of account of 1883, as having been rendered, but of no other account. This was a much mooted question, on the trial of the plea, and we think a fair preponderance of the evidence shows that such of the accounts as were rendered were disputed, and payment was refused, in part at least.

But we are of the opinion that the arbitration proceedings and the suit to enforce the payment of the award of the arbitrators constitutes a legal interruption of prescription, and that the current of prescription remained suspended during their pendency.

A submission of the identical matters litigated in this suit was made to arbitrators, and they were sworn on the 18th of November, 1886. They made and signed an award on the 8th day of April, 1887. On the 20th of August, 1887, the present plaintiff sued in affirmance of the award, and prayed a judgment rendering it executory.

On an exception tendered by the present defendant the judge who tried and decided this cause, tried and maintained the exception on the *sole* ground that the arbitrators failed to make their award within three months, and that the umpire did not appear to have been sworn.

The code provides that a legal interruption of prescription takes place when the debtor " has been cited to appear before a court of "justice * * whether the suit has been brought before a " court of competent jurisdiction or not." R. C. C. 3518.

In the case of Satterly vs. Morgan, 33 Ann. 846, this court entered into an extensive examination of adjudicated cases under this article of the code, and, upon most careful consideration, held that there is a

clear "distinction between the technical sufficiency of a citation as a " basis for the maintenance of proceedings and judgment, and its suf- " ficiency for the purpose of interrupting prescription."

The same can be as correctly said of the character of the suit.

An arbitration is a covenant by which persons who have a *law suit* or difference with another, select arbitrators to decide the matter. R. C. C. 3099.

They may submit " a law suit already instituted, or only in contem-: plation." R. C. C. 3102.

"The arbitrators ought to determine as judges, agreeably to the " strictness of law." R. C. C. 3110.

. We think it is clear that the proceedings of arbitrators are *quasi* judicial. During the pendency of their proceedings plaintiff's right of action for the enforcement of his demands, in the courts, was sus- pended; and hence prescription was suspended, if not interrupted, thereby.

The defendant's counsel claims that the plaintiff dismissed his former suit *voluntarily* and that he thereby lost the benefit of the interruption, if any was produced thereby. Not so; the judge *tried* the defen- dant's exception and sustained it and rendered an interlocutory judg- ment dismissing the suit as of non-suit, and with a full reservation of plaintiff's right "to sue upon the matters embraced in the sub- mission."

We are of the opinion that the judge *a qua* correctly overruled de- fendant's plea of prescription.

## II.

On the merits, the principal contention of defendant's counsel is that the plaintiff has not introduced a sufficient amount of *positive* proof to entitle him to judgment.

That while it is true that the plaintiff, as a witness, states em- phatically that the accounts are correct, yet he, upon cross-examina- tion, admitted that he did not know that of his own personal knowledge, but that he knew that the accounts were drawn from his books, and that they were correctly kept. His contention is that a merchant's books are not evidence in his favor and hence parol evi- dence cannot be. This is a *non sequitur*.

The testimony of the proprietor that he knows that his books are correctly kept is not proof of their *contents*, but that their *contents are correct*. This is certainly competent, if not sufficient evidence, when taken in connection with the books. Now, the accounts are the mere exemplifications of the books, and his statement is that the accounts

have been correctly kept, to his knowledge. In addition to this, all of these accounts were rendered to the defendant years ago, and while it is true that he did not remain silent, and thus acquiesce in their correctness, yet he did make *only* a few objections to some of the items. Those items not objected to were certainly admitted. The quotations we have made from his answer clearly admit that there were dealings between himself and plaintiff in those years. In the spring of 1884, he represents and judicially admits that there was an agreement between himself and the plaintiff, whereunder the latter undertook to furnish him plantation supplies upon certain specified terms. He again states that he settled for all amounts represented by the plaintiff to have been purchased for *cost*, up to the 24th of June, 1884; that he delivered him a lot of wool for sale, and that the plaintiff had agreed to sell the wool and place the proceeds to his account; that " notwithstanding he had made periodical settlements, plaintiff's " accounts erroneously contain charges for articles alleged to have " been purchased within the periods for which he settled;" that the charges made in the accounts for freights paid are erroneous and unauthorized.

In addition to all of these guarded admissions in the defendant's answer, clearly admitting the truth and genuineness of the accounts, with limited exceptions, there is other evidence in the record which it is unnecessary for us to detail, which seems to fortify and strengthen the conclusion that the district judge has done ample and exact justice in the premises. Amongst others, one incident may be cited, and that is, the award of the arbitrators which places about the same estimate upon the defendant's indebtedness as the judgment appealed from does. While it was not offered in evidence for the specific purpose, yet it is in the record, and we may give it consideration as a circumstance that may be placed in the scales before striking the balances.

But without any of these circumstances being considered, the plaintiff's own statement made on cross-examination, in the absence of other testimony, would be ample. It is as follows, viz:

" Q.   Did you sell the articles enumerated in your accounts?

" A.   I think I did. Not all of them myself.

" Q.   Do you know the particular ones you sold?

" A.   Not the specific articles.

" Q.   Do you know of your own knowledge that they were sold?

" A.   I saw the majority of them sold."

These statements are corroborated by the evidence of Herman

Meyer and Solomon Meyer. The latter states emphatically that he delivered these accounts to the defendant and that he made no objection to them at that time or subsequently.

Altogether, we are of opinion that the accounts are substantially proven, and that the credit allowed defendant in addition to the credit of $7044.45 allowed by the plaintiff on the face of the account and before suit, is all that he is entitled to.

Judgment affirmed.