(75 South. 225)

No. 22340.

### Succession of PARKERSON.

### LAVILLE v. Succession of PARKERSON.

(April 16, 1917. Rehearing Denied May 14, 1917.)

*(Syllabus by the Court.)*

1. EXECUTORS AND ADMINISTRATORS ⊕⟶221(4) — SUCCESSION — CLAIM — EVIDENCE — SUFFICIENCY.

The uncorroborated statement of the plaintiff, in a suit against the succession of a deceased person for an accounting of funds of which he had possession and control during his lifetime, that the deceased had represented to the plaintiff that the latter's money was invested so as to yield a monthly revenue exceeding the legal rate of interest is not sufficient to sustain the plaintiff's demand for the revenue exceeding the legal rate of interest.

[Ed. Note.—For other cases, see Executors and Administrators, Cent. Dig. §§ 903, 903½, 1872–1874, 1876.]

2. EVIDENCE ⊕⟶354(22)—EXECUTORS AND ADMINISTRATORS ⊕⟶443(2) — SUCCESSION — BOOKS OF ACCOUNTS—ADMISSIBILITY.

Although books of account are not admissible in evidence in favor of the person who made the entries in them, the representative of the succession of a deceased person may submit, as a detailed answer to a suit for an accounting of funds intrusted to the deceased person, the account kept by him, consisting of entries made at times not suspicious, in the ordinary course of business transactions extending over a period of years. When the correctness of the entries appearing in such account is established by vouchers or other proof, the account itself is not subject to the objection to its admissibility as evidence; it is in the nature of pleading.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 1476, 1477; Executors and Administrators, Cent. Dig. §§ 1823–1827, 1842–1845.]

3. LIMITATION OF ACTIONS ⊕⟶41—PRESCRIPTION—NATURE OF DEFENSE.

The plea of prescription liberandi causa is a means of defense, not a cause of action. In an action for an accounting of funds intrusted to the defendant, the plea of prescription will not avail the plaintiff to prevent the defendant's having credit for the amount of a just debt that was paid by the defendant for the account of the plaintiff before the debt prescribed.

[Ed. Note.—For other cases, see Limitation of Actions, Cent. Dig. §§ 214, 215.]

Appeal from Civil District Court, Parish of Orleans; E. K. Skinner, Judge.

Suit by Mrs. Eli Laville against Succession of William S. Parkerson. Rule permitting plaintiff to withdraw from registry of the court the amount deposited by the executrix, and to prosecute her suit for the balance, and judgment in favor of defendant as to the balance, and plaintiff appeals. Affirmed.

Guion, Lambremont & Hebert and John F. Wilmeth, all of Plaquemine, for appellant. Merrick, Gensler & Schwarz, of New Orleans, for appellee.

O'NIELL, J. The plaintiff brought suit against the succession of William S. Parkerson for $10,644.07, alleged to be the balance due of an amount deposited with him for investment for her account, in 1903 and 1904. She alleged in her petition that the deceased collected for her account $72 from a firm styled Babin Bros., on the 20th of October, 1903, that he collected the insurance on the life of her husband, amounting to $9,568.37, on the 30th of October, 1903, and that she handed to him the sum of $1,060, on the 1st of August, 1904, making a total of $10,700.37. She alleged that the total amount received by the deceased for her account was $10,701.37, and that she authorized the payment by him of a debt of $57.30 due by her; hence she claims the balance of $10,644.07.

She alleged that, during the 11 years when the deceased had charge of her money, he had repeatedly represented to her verbally and by letters, that her money was safely invested and was yielding a monthly income "in the neighborhood of $100, which amount, or thereabout, in money or its equivalent, the said Parkerson remitted to her." She alleged that, believing the letters were of no value, she had destroyed all of them except the last that she had received, dated the 1st of February, 1915; that, about 2½ years before the institution of this suit, the deceased visited her at her home in Plaquemine, La., and, in answer to her insistence that she should be permitted to invest at least a portion of her money in a home for herself and her children, he replied that she should not bother herself with real estate; that she was doing splendidly; that he had her money so invested that she could not lose it, and that he had almost $11,000 invested for her, yielding an income sufficient for her and her children to live on comfortably. She alleged that the deceased had repeatedly admitted to her verbally that he had almost $11,000 for her account.

141 La.—17

In her answer to the suit, the executrix admitted that the deceased had received for account of the plaintiff the sums alleged in the petition, except that the amount received on the 1st of August, 1904, was not $1,060, but $1,050. The executrix denied that the sums were received by the deceased for investment for the account of the plaintiff. She alleged that, as a matter of friendship for the plaintiff, and with a generous desire to help her and her seven small children, the deceased had provided the plaintiff with a larger income than she could have derived from any investment of her capital, paying her an excessive rate of interest on the money he had collected for her account. She denied that the deceased had ever represented to the plaintiff, verbally or by letter, that her money was invested so as to yield a monthly revenue of approximately $100. She admitted, however, that the deceased had made monthly remittances to the plaintiff of sums amounting to approximately $100 per month. She alleged that, in addition thereto, the deceased had remitted to the plaintiff, at the latter's request, extra sums, at various times, and had paid debts due by the plaintiff, with a portion of the funds in his hands. The executrix annexed to her answer an itemized account kept by the deceased of the receipts and disbursements of the funds of the plaintiff, covering the entire period from the 12th of October, 1903, to the 4th of April, 1915, a short time before his death. The account showed a balance of $3,928.32 due to the plaintiff, which, with $84.25, for interest and costs accrued to the date of the filing of the answer, making a total of $4,012.57, the executrix deposited in the registry of the court. Thereafter she discovered that she had made an error of $369.70 to the prejudice of the plaintiff, which, with $32.41 for accrued interest and $22.20 for additional costs, making an additional sum of $424.31, she also deposited in the registry of the court.

On a rule taken by the plaintiff, she was permitted to withdraw from the registry of the court the $4,436.88 deposited by the executrix, and to prosecute her suit for the balance, $6,207.19, of the amount claimed in her petition.

Judgment was rendered in favor of the defendant, rejecting the plaintiff's demand for more than the amount deposited by the executrix, and withdrawn by the plaintiff from the registry of the court. The plaintiff has appealed.

The plaintiff's counsel objected to the introduction in evidence of the account taken from the books kept by the deceased and attached to the answer of the executrix. In support of that objection he invokes the rule stated in article 2248, R. C. C., that the books of merchants cannot be given in evidence in their favor, that they are good evidence against them, but, if used as evidence, the whole must be taken together; and he invokes the rule stated in article 2249, R. C. C., that domestic books and papers are not proof in favor of him who has written them; that they are proof against him: (1) In all cases where they formally declare a payment received; and (2) when they contain the express mention that the entry was made to supply the want of a title in favor of him for whose advantage they declare that the obligation was made.

[1, 2] The entries of credits in his favor, and memoranda of self-serving declarations made by the deceased, cannot serve as proof of the credits claimed by him. But the executrix does not depend upon the entries in the books to prove their correctness. The correctness of each and every item appearing on the account is sustained and proven by a voucher to correspond with it. The account was furnished by the executrix as her answer, in detail, to the plaintiff's suit. This suit is in the nature of, and is in fact, an action for, an accounting, call it what we may. The party who received the money for which an accounting is demanded, being dead, cannot explain in court what disbursements he made of the funds. It would be a denial of justice to hold that the explanation available from the entries recorded by him, at times not suspicious, in the regular course of business transactions covering a period of 11 years, could not be filed as a part of the pleadings by his succession representative in answer to a suit for an accounting of the funds he received. The account is admissible to explain, though not to justify, the entries in it.

There is an admission in the record, signed by counsel for the appellant and the appellee, respectively, which, in our opinion, does away with the objection to the admissibility of the account taken from the ledger of the deceased. That admission is that the charges in the ledger of the amounts paid to Mrs. Laville by Mr. Parkerson, or paid out for account of Mrs. Laville by Mr. Parkerson, have been fully established, and were properly charged to her account. It appears that the words, "and were properly charged to her account," were added by the counsel for the appellee when the admission prepared by the counsel for the appellant was submitted for signature. Hence there is a written acknowledgment signed by counsel for the appellee that those words were added to the agreement as an admission merely that the amounts paid out by the deceased were correct charges against Mrs. Laville, without any waiver on the part of the appellant's counsel of her claim for interest; that being the question at issue in the case.

In other words, it is admitted by the appellant that the amounts shown on the account as having been paid by the deceased to or for the account of the appellant were in fact paid, and that she got the benefit of the payments. The appellant contends merely that the remittances made to her by the de-

ceased should not have been charged against her capital, but should have been paid as interest or revenue, in accordance with the alleged verbal admission of the deceased that her money was yielding her a monthly income "in the neighborhood of $100."

The account shows that the $72 collected by the deceased from Babin Bros. was remitted to the plaintiff on the day it was collected, October 12, 1903. On the 30th of October of that year, the deceased collected the insurance money, $9,568.37. In November of that year, he paid the expense of the funeral of the husband of the plaintiff, $186, for which he was reimbursed by the firm of Milliken & Farwell, in January, 1904. In November and December, 1903, and January, 1904, the deceased made remittances to the plaintiff, and paid debts for her, amounting to $489.20, from the insurance money he had collected. Included in those disbursements, however, were bills paid the Ursuline Convent for the tuition and board of the plaintiff's children, amounting to $84.84, and two remittances made to the plaintiff of $50 each. These sums, aggregating $184.85, were not charged to the capital. Hence the balance due the plaintiff in January, 1904, was $9,264.-02. Under date January 16, 1904, appears a memorandum in the handwriting of the deceased, viz.:

"I am to send her $50 each month and pay children's schooling. After October 1st, 1904, she is to occupy 930 Third street, this city, and get $60 per mo., all in the way of interest on above balance."

Thereafter appear the entries made in 1904, showing that a remittance of $50 was made to the plaintiff and $40 to the Ursuline Convent, each month until the 1st of December, when a remittance of $60 was made to the plaintiff. None of those remittances were charged to the capital. Under date August 1, 1904, the plaintiff was given credit for the $1,050 received by the deceased. During that year he paid out for her account

$287.50 in excess of the amounts remitted to her. Hence at the close of the year 1904, the account showed a balance of $10,026.52 due to the plaintiff. A remittance of $60 was made to the plaintiff at the beginning of each month, January, February, March, April, and May, 1905, which was not charged to her capital. On April 1, 1905, an extra remittance of $25 was sent to the plaintiff, and on May 1st of that year an extra remittance of $15 was sent her, so that, at the end of May, 1905, the balance due her was $9,986.52. There appears a memorandum in the handwriting of the deceased, between the dates May 1 and June 1, 1905, viz:

"Pay her $75 per month and let her live in 930 Third street free."

These memoranda are not evidence in favor of the deceased. They merely explain what disposition was made of the plaintiff's funds. Whether that disposition was correct or not is to be determined by the court from the pleadings and evidence in the case. The account shows that, from the 1st of June, 1905, to the end of July, 1906, a remittance of $75 was made to the plaintiff each month, which was not charged to the capital. During that period, extra remittances were made to her, amounting to $205, which were charged to the capital, and bills were paid for her account, amounting to $159, which were also charged to the capital, thus leaving a balance of $9,622.52 to her credit on the 1st of August, 1906. It appears that Mrs. Laville moved from New Orleans to Donaldsonville on the 8th of July, 1906. Under date August 1, 1906, appears a memorandum, in the handwriting of the deceased, viz.:

"Send her $90 per month—$75 as above and $15 extra—to pay her rent and living expenses."

From that date to the end of August, 1908, the account shows a remittance of $75 was sent to the plaintiff on the 1st day of each month, which was not charged to the capital. During that period, extra remittances were

made to her, amounting to $735, which were charged to the capital; five remittances of $30 each were sent to the Normal School to pay tuition for the children, which were also charged to the capital, and a clothing bill, amounting to $9.50, was paid and charged to the plaintiff, so that, on the 1st of September, 1908, the balance due to the plaintiff was $8,728.02. There appears in the handwriting of the deceased another memorandum, viz.:

"From August, 1, 1908, I am to allow Mrs. Laville $60 per month, and whatever else she draws is to be deducted from principal."

It is to be observed that $60 per month was slightly in excess of 8 per cent. per annum on the balance then due to the plaintiff. The account shows that from the 1st of September, 1908, to the end of December, 1909, a remittance of $60 was sent to the plaintiff each month, which was not charged to the capital, and that extra remittances, amounting to $700, were sent to her during that time, which were charged to the capital, thus reducing the balance to $8,028.02. Then appears a memorandum, in the handwriting of the deceased, viz.:

"From January 1, 1910, I am to allow Mrs. Laville $55 as interest, and whatever else she draws is to be deducted from principal."

That also was slightly in excess of 8 per cent. per annum on the balance due. The account shows that on the first of each month, in the year 1910, the plaintiff received a remittance of $55, which was not charged to the capital, and that she received extra remittances amounting to $640, which were charged to the capital, thus reducing the balance to $7,388.02. Then appears a memorandum, in the handwriting of the deceased, viz.:

"From January 1, 1911, I am to allow Mrs. Laville $50 per month, and whatever else she draws is to be deducted from principal."

That also was slightly in excess of 8 per. cent. per annum on the balance due. The account shows that she received $50 on the 1st of each month in the year 1911, which

was not charged to the capital, and that she received extra remittances amounting to $675, which were charged to the capital, thus reducing the balance to $6,713.02. Then appears a memorandum, in the handwriting of the deceased, viz.:

"From January 1, 1912, I am to allow Mrs. Laville $45 per month, and whatever else she draws is to be deducted from her principal."

That also was slightly in excess of 8 per cent. per annum on the balance due. The account shows that she received a remittance of $45 on the 1st of each month, in the year 1912, which was not charged to the capital, and that she received, in that year, extra remittances amounting to $660, which were charged to the principal, thus reducing the balance to $6,053.02. Then appears a memorandum, in the handwriting of the deceased, viz.:

"From January 1st, 1913, I am to allow Mrs. Laville $40 per month in the way of interest, and whatever else she draws is to be deducted from her principal."

That also was slightly in excess of 8 per cent. per annum on the balance due. On the 1st of January and of February, 1913, she received a remittance of $40, which was not charged to the principal, and a remittance of $60, in each of those months, which was charged to the principal, thus reducing the balance to $5,933.02. Then appears a memorandum, viz.:

"From February 1, 1913, I am to allow Mrs. Laville $30 per month in the way of interest, and whatever else she draws is to be deducted from her principal."

That was slightly in excess of 6 per cent. per annum on the balance due. On the 1st of each of the remaining months in 1913, she received a remittance of $30, which was not charged to the capital, and she received extra remittances, amounting to $645, which were charged to the principal, thus reducing the balance to $5,288.02 at the end of that year. Then appears a memorandum, viz.:

"From January 1, 1914, I am to allow Mrs. Laville $25 per month in the way of interest,

and whatever else she draws is to be deducted from her principal."

That was a little less than 6 per cent. per annum on the balance due at the beginning of the year 1914, but was slightly in excess of 6 per cent. per annum on the average balance due in that year. The account shows that she received a remittance of $25 on the 1st of each month, to and including the month of April, 1915, which was not charged to the principal, and that she received extra remittances, during that period, amounting to $990, thus reducing the balance to $4,298.02.

It appears, therefore, that the plaintiff received, in the way of interest, $7,625.50, during the 11 years and 7 months that her money was in the possession of the deceased. That was at a rate exceeding 9 per cent. per annum on the average balance due her during that period, to say nothing of the rent of the defendant's house in New Orleans for a period of 20 months. And every cent of the capital has been returned to her. Her demand for more is based solely upon her vague statement that the deceased represented to her that he had her money invested so that it was yielding her a monthly income "in the neighborhood of $100." · And that statement is discredited by her declaration, repeated several times on cross-examination, that the deceased promised to pay her 8 per cent. interest on her money.

It may be, and perhaps is, true that the plaintiff was greatly disappointed when she learned, after the death of Mr. Parkerson, that she had spent a large portion of her capital. But it does not appear that the deceased was at fault in that respect. With the exception of a few comparatively small debts which were paid for her account by the deceased, every dollar of her money that was spent was remitted to her and spent by her, and there is no reason why she should not have realized all along that she was spending her capital.

[3] The plaintiff filed pleas of prescription of 3 and 10 years to certain charges appearing on the account, for debts paid for account of the plaintiff, aggregating $500.25, paid in 1903, 1904, and 1906. It is not pretended that the debts were not correct charges against the plaintiff. On the contrary, as stated above, it is admitted by the plaintiff that the amounts paid out for her account were correct charges against her. The argument in support of the pleas of prescription is that she did not know that the deceased had paid the debts for her until after his death. The plea of prescription liberandi causa is a means of defense, not a cause of action. The maxim, "Quæ temporalia ad agendum perpetua ad excipiendum sunt," is an appropriate answer to the plea of prescription in this case.

The judgment appealed from is affirmed, at the cost of the appellant.