### JARREAU v. DIAZ.*
### No. 14064.

Court of Appeal of Louisiana. Orleans.

Jan. 16, 1933.

See, also, 142 So. 363.

J. H. Morrison, of New Orleans, for appellant.

Delvaille H. Theard, of New Orleans, for appellee.

JANVIER, J.

Joseph A. Jarreau, plaintiff, alleges that he was employed by defendant as a salesman at $150 per month, that he has been discharged, and that there is now due him on account of salary $130, and that he is also entitled to $4.18, which he necessarily expended for account of Diaz, defendant, in the course of the employment. Diaz admits that Jarreau was employed by him, but contends that the employment was on a commission basis, that no salary was to be paid, the understanding being that Jarreau was to receive 50 cents for each ton of coke sold by him. Diaz contends that the misunderstanding resulted from the fact that he agreed to advance to Jarreau $150 a month until the latter could make a start in building up a trade. It seems to be conceded that within the few weeks during which Jarreau was engaged in attempting to sell coke for defendant he produced practically no results, and there is no dispute as to the right to terminate the employment.

Defendant, maintaining that the amount advanced has greatly exceeded the commissions to which he admits plaintiff was entitled, seeks, by reconventional demand, to secure judgment for $106.82, alleging that to be the difference between the advances made to Jarreau and the commissions earned by him.

The trial court rendered judgment for plaintiff, as prayed for, and dismissed defendant's reconventional demand. Defendant has appealed.

■■ There is involved, as is manifest, only a question of fact; i. e., was the employment on a salary basis, or on a commission basis?

The testimony is given by plaintiff and by his wife and by defendant, Diaz, and by his brother. Plaintiff and his wife testify that the agreement was plainly understood by all, and was made with Diaz alone, and contemplated the payment to Jarreau of a salary of $150 per month, regardless of the amount of business produced. Defendant and his brother aver, on the contrary, that the agreement contemplated the payment to Jarreau of commission only, and that it was fixed at 50 cents per ton. Plaintiff seeks to make capital of the fact that he was already employed as salesman by another coal merchant and was receiving both a salary and a commission, and his counsel argues that he would not have severed his already established connection in another employment on so uncertain a basis as that contended for by defendant. We note, however, that plaintiff has studiously avoided making any reference to the amount of salary he had been previously receiving, or to the amount of commission he had previously earned and also that the employment with Diaz was sought by Jarreau.

There is a difference of opinion as to whether or not defendant's brother was present when the agreement was finally consummated; Mr. and Mrs. Jarreau maintaining that no one was present with defendant at that time, whereas defendant and his brother both state positively that the brother was with him.

As additional evidence corroborative of his contention that the agreement contemplated commissions only, defendant introduces in evidence his day book, and calls attention to entries made by him in that book showing that the amounts paid to Jarreau were paid as advances on commissions, and also showing that the book contained entries of commissions earned by Jarreau. But it is maintained by plaintiff's counsel that the said book should not be admitted in evidence, since, under article 2248 of our Civil Code, "The Books of Merchants can not be given in evidence in their favor," and further because, under article 2249 of our Civil Code, such books "are no proof in favor of him who has written them." Counsel for defendant, in answer to this objection, asserts that the rule referred to has no application where the person who kept the books takes the stand as a witness and testifies from them and they are then offered in evidence in connection with the verbal testimony, and he cites the following authorities, which he states support this view: Morgan v. Bickle et al., 2 Mart. (N. S.) 377; Meyer v. Ludeling, 40 La. Ann. 640, 4 So. 583; Succession of Magi, 107 La. 208, 31 So. 660; N. O. Canal & Banking Co. v. Leeds & Co., 49 La. Ann. 123, 21 So. 168; Succession of Parkerson, 141 La. 511, 75 So. 225; Succession of McLaughlin, 14 La. Ann. 398.

The question is an interesting one, but it is unnecessary to decide it, for the reason that the book was admitted below, and we find that, if it be considered by us, it does no more than set forth defendant's interpretation of the contract, and merely furnishes some corroboration of his statement that he so understood the agreement. Were the matter before us as res nova, it may be that we would have come to a conclusion different from that reached by our brother below, but he saw and heard the witnesses and was in much better position than are we to judge of their credibility and to determine the weight to be given to their testimony and to the other evidence adduced, and we therefore feel that, even if we give full weight to the said book, the rule that, on questions of fact, appellate courts should not reverse findings of trial courts, unless those findings are manifestly erroneous, is peculiarly applicable here, and renders an affirmance inescapable.

The judgment appealed from is affirmed.

Affirmed.